C. S. TARPLEY *v.* HUGH WILSON, Survivor, &c.

1. CONTRACT: TIME OF PERFORMANCE.—It is true, as a general rule, that where a party to a contract stipulates to perform a particular thing as his part of the agreement, he is bound to use due diligence, and to perform it in a reasonable time; but this rule cannot be applied with strictness to a case where the agreement was, that the assignee of a note, given for the purchase-money of land, should prosecute a suit in chancery, in the name of the purchaser, to procure a good title to the land for him, as a condition on which the latter was to pay the purchase-money; for the final determination of the suit depends as well upon the action of the court in which it is pending, as upon the diligence of the party charged with its management.

2. CHANCERY: DISMISSAL FOR WANT OF PROSECUTION: EFFECT OF REINSTATEMENT AFTER DISMISSAL ON THE QUESTION OF DILIGENCE IN THE PROSECUTION.— If a suit in chancery, which has been once dismissed for want of prosecution, be afterwards reinstated by the court, this will be held as a judicial determination that there was no unreasonable delay in the prosecution of it.

3. INTEREST: TRUSTEE: WHEN LIABLE FOR.—The holder of collateral securities is liable for interest on the amount collected from that source, and applied to his own use.

4. SAME: SAME: RATE OF INTEREST.—The holder of collateral securities bearing eight per cent interest per annum, is not liable to pay interest at that rate, on the amount collected by him from the securities; he will be chargeable only with interest at the rate of six per centum per annum.

5. CHANCERY: PLEADING: PRESUMPTIONS AGAINST PARTY FAILING TO MAKE DISCOVERY.—Where the defendant neglects, in his answer, to discover the date of a fact within his knowledge, when required to do so, and there is no proof on that point, the date will be considered by the court to be that which is most beneficial to complainant, and consistent with the other circumstances of the case; and hence, where a defendant, in whose hands collateral securities, bearing eight per cent. interest, had been placed by the complainant, being required to answer whether he had collected them, and the date of such collection, answered, admitting that he had made the collection, but failed to state the time at which the collection was made, he will be considered as having received the money at the date of filing his answer, so as to make him chargeable with eight per cent. interest on the securities up to that period.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

In the year 1839, C. S. Tarpley purchased from one Davenport a tract of land, situated in Hinds county, in this State, and con-

taining about five hundred and sixty acres.   The price agreed to be paid was $25 per acre, one-half of which was paid, and for the other, Tarpley executed his note to Davenport, falling due in 1840, and took a deed with general covenants of warranty, and went into possession.   Davenport assigned the note to Martin Pleasants & Co., and soon afterwards died insolvent.   It appearing that there was an outstanding legal title to one-half of the land, in the heirs of one Caldwell, Martin Pleasants & Co., in May, 1843, filed a bill in the Superior Court of Chancery, in the name of Tarpley, against the heirs of Caldwell, to perfect the title in Tarpley.   On the 10th day of January, A. D. 1843, Tarpley being unwilling, on account of the doubts as to the title, to pay the balance of the purchase-money, an agreement was entered into between him and Martin Pleasants & Co., in the following words and figures:

" Whereas, Martin Pleasants & Co. hold my note, transferred to them by Richard G. Davenport, for $7000, due 1st January, 1840, which note was given for a tract of land, on which I now reside, in Hinds county, purchased by me of said Davenport; and whereas, a difficulty has arisen in reference to the title to said land, a portion of which is claimed by the heirs at law of Isaac Caldwell, and to obtain the title to which the said Martin Pleasants & Co., have filed a bill in the name of said Tarpley, in the High Court of Chancery of this State of Mississippi, against the heirs of Caldwell, which suit is now pending and undetermined in said court, and the said Tarpley having paid to Martin Pleasants & Co. the sum of $8680, being the amount of said note, with interest up to the 1st day of January, 1843.

" And it is agreed by and between the said Martin Pleasants & Co., and the said Tarpley, that if the aforesaid suit, brought to recover the title to said land against the heirs of Caldwell, should be decided in favor of said heirs, then the said Martin Pleasants & Co. are to pay and satisfy all the costs of said cause, and to refund to said Tarpley the said sum of $8680, with interest thereon · from the 1st day of January, 1843; and to secure the performance of the agreement on the part of said Martin Pleasants & Co., they have placed in the hands of said Tarpley, as collateral security, a note upon W. S. Wills for the sum of $7186 46, due 17th May, 1842, and secured by a deed of trust, and three notes on W. J.

Cahall and Wm. S. Cahall, $1785 88 each, due two, three, and four years from (the) 15th day of May, 1842; and upon said Tarpley's obtaining a complete and perfect title to said land, or the said Martin Pleasants & Co. refunding the said sum of $8680, with interest as aforesaid, then the above enumerated notes are to be returned to Martin Pleasants & Co.

" Witness, &c., 10th January, 1843,

" Signed, " MARTIN PLEASANTS & Co.

" C. S. TARPLEY."

Tarpley paid the money, and Martin Pleasants & Co. delivered the notes as collateral security, according to the terms of the agreement.

The collateral securities appearing to be unavailing, two other notes, for $2092 82 each, and bearing interest from the 15th April, 1844, were afterwards placed in the hands of Tarpley as additional security, and of these Tarpley collected the sum of $4000, but at what date does not appear.

The suit in chancery, alluded to in the written agreement above set forth, was commenced on the 17th day of May, 1842, and progressed as follows: At the June Term, 1842, a guardian *ad litem* was appointed for the minor heirs. In June, 1843, leave was given to file an amended bill, which, however, was not filed until August, 1844. At the August Rules, 1844, an order of publication was taken against non-resident parties. At the June Term, 1845, another guardian *ad litem* was appointed. In November, 1847, the answer of one of the defendants was filed. No other step seems to have been taken until June, 1848, when the cause was dismissed for want of prosecution. On the 13th day of January, 1849, this dismissal was set aside. In 1852, a decree was rendered for the complainant, which, upon appeal, was affirmed by the High Court of Errors and Appeals, in the year 1854.

It appeared by the testimony of L. V. Dixon, that the order, dismissing the suit for want of prosecution, in June, 1848, was made under the following circumstances, viz.: that the witness was, at that time, acting as deputy-clerk of the Chancery Court, and that Tarpley came to him and spoke of the hardship he felt in the situation of the cause, and said if he could get rid of it, it would be worth eight or ten thousand dollars to him; that he was merely

a nominal party, and had not the right to dismiss it, but that those interested in it were neglecting the case; that the property intended to be secured to him was depreciating constantly, and greatly to his injury.   The witness then looked at the General Docket of the court, and discovered that no step had been recorded thereon in behalf of the prosecution for two years.   He informed Tarpley of this, and also that the practice of the court was to dismiss causes not prosecuted by some action for two terms of the court, and suggested to him to avail himself of that fact, to which Tarpley replied by requesting witness to enter the motion, and which the witness did.   The witness further stated, that at the time the motion was entered the cause was on the Hearing Docket, and ready for trial.

During the pendency of the litigation, Caldwell's heirs sued Tarpley in ejectment for the land, and recovered judgment in the year 1850, and in February, 1851, evicted him.

On the 3d day of January, 1849, Tarpley filed this bill and afterwards a supplemental bill against Hugh Wilson, the surviving partner of Martin Pleasants & Co., for the purpose of procuring a decree condemning the collateral securities placed in his hands, to be absolutely his.   The ground upon which he sought this was, that Martin Pleasants & Co. had negligently and carelessly permitted the chancery suit, above referred to, to be delayed for an unreasonable time, and had thereby failed to procure him a title until the year 1854, when the property had greatly depreciated in value; and that, after his eviction in 1851, great waste had been committed on the premises.

The defendant, in his answer, denied that the delay was unreasonable, and insisted that the case was brought to trial according to the usual practice of the Chancery Court, and that the dismissal, in 1848, was effected by the conduct of Tarpley.   He also made his answer a cross-bill, and asked for a decree against Tarpley for the amount he had received on the collaterals placed in his hands. The allegations of the cross-bill, and Tarpley's answer on this point, are sufficiently set out in the opinion of the court.

The chancellor dismissed Tarpley's bill, and decreed that he should pay to defendant the amount received on the collateral securities, with eight per cent. interest thereon from 15th of January, 1844.

From this decree Tarpley appealed.

*T. Anderson* and *W. Yerger*, for appellant.

1. Time was of the essence of the contract, and the unreasonable delay of Martin Pleasants & Co. in prosecuting the suit, made them liable to refund the amount paid by Tarpley to them. 6 Call. 308; 3 Cowen, 445; 3 J. J. Marsh. 15; 5 Gill. & Johns. 121; 4 Desaussure, 198; 9 S. & M. 243; 2 Jeremy Eq. 461.

2. The negligence of Martin Pleasants & Co., and the change of circumstances during the delay, entitle the complainant to relief. 9 S. & M. 609; 1 Mad. Ch. 330; 7 Paige, 548; 7 Yerg. 577; 1 Johns. Ch. 379.

3. Such bills are addressed to the sound discretion of the Court. 9 S. & M. 336; 7 Ib. 768.

4. It is the duty of the court to place the parties as nearly as possible in their original situation.

*Freeman & Dixon*, for appellee.

HANDY, J., delivered the opinion of the court.

This case depends upon the written contract between the parties.

The substance of the contract was, that if the suit against the heirs of Caldwell, "to recover the title to the land," should be decided in favor of Caldwell's heirs, then Martin Pleasants & Co. should refund to Tarpley the money paid by him to them, and that the collateral securities placed by them in his hands for that purpose, should be absolutely his property; otherwise, that he should restore them to Martin Pleasants & Co.

It is not a forfeiture of the interest reserved by this agreement in the securities placed in Tarpley's hands, that he was turned out of possession of the land, by another action at law of Caldwell's heirs, and that he is now out of possession, and has to resort to his action to recover possession, unless such recovery would prevent the suit mentioned in the agreement, from being decided in favor of the complainant. For the agreement extended only to the suit between the complainant and Caldwell's heirs, then pending in chancery; and it was only upon the decision of that suit in favor of Caldwell's heirs, that the securities became the absolute pro-

perty of Tarpley.   Martin Pleasants & Co. had the right to stand upon the terms of their contract.

The question then is, has the chancery suit not been decided in Tarpley's favor, under the terms of the agreement?   It is plain that it has been.

But it is said that this was not done in a reasonable time, and in consequence of the unreasonable delays and laches of Martin Pleasants & Co. that the land has been much depreciated, and· Tarpley much injured.

It is true, that a party stipulating to do a particular thing, as his part of the contract, is bound to use diligence, and to perform it in a reasonable time.   But this rule could not apply with strictness to a case of this kind, which depended as well upon the rules and action of the court in which it was pending, as upon the diligence of the party charged with its management.   In this case, the successful prosecution of the suit depended much upon the action of the court.   And the answer shows that the proceedings of the court did not form an exception, to the almost proverbial tardiness of chancery courts.   The presumption of law would be, that there was no undue delay on the part of the court, and that if there had been any laches on the part of those representing the complainant, the case would have been dismissed by the court for want of prosecution.   It appears that the attention óf the court was directed to that very point; and the fact, that the suit, after it had been dismissed for want of prosecution, was reinstated by the court, must have all the effect of a decision of the court that there was not unreasonable delay in its prosecution.

For aught that appears then, considering the proceedings of the court and the acts of the defendants, in a judicial view, the presumption of law is, that the cause was prosecuted and determined with proper diligence, and that any apparent delays were such as were recognized by the court, and proper.   Any other rule than ·this, would necessarily involve the consideration, whether the court had done its duty in having the cause attended to with proper diligence.

We cannot therefore say that the suit was not decided within a reasonable time, or that it was delayed in consequence of the negligence of the defendants in this suit; and it follows, that upon the

decision of the suit in favor of Caldwell's heirs, the defendants were entitled to the notes placed in the complainant's hands, and in this respect that there is no error in the decree.

It remains to consider, whether the appellant is liable for interest, and if liable, at what rate and from what time.

It appears distinctly, by the answer of the appellees to the original bill, that two notes came to the appellant's hands for $2072 82 each, dated 15th January, 1844, and bearing interest at the rate of eight per cent. from date, and which remained unpaid, except the sum of $309, paid to the appellees on the 13th April, 1846. This answer is made a cross-bill, and the appellant is called · upon to answer, as to the above statements in relation to the notes which came to his hands, and whether he had not collected and appropriated to his use the balance due on these notes, and to state the time when he collected the money thereon. In his answer, he admits that he collected the amount of the two notes above mentioned, which he stated amounted, as well as he recollected, to about $4000, except the sum of $309, paid to the appellees. He does not deny the date, amount, and tenor of the notes as stated in the cross-bill, and distinctly " admits himself to be chargeable with the amount of these two notes with interest on them, less the sum of $309."

This is conclusive upon the point that he is liable for interest, having appropriated the money to his own use and admitted his liability, which was clear, for interest, in consequence of that application.

His answer does not state the time at which he collected the money, and there is no proof upon that point. According to his admissions, he is clearly liable for the amount of the two notes, less $309, from their date, at the rate of eight per cent. until they were collected by him, that being the rate of interest which they bore, and as he has not shown when he received the money, although required to do so by the cross-bill, he must be considered as having received it at the time of filing his answer to the cross-bill, which appears to have been on the 3d December, 1850. He is chargeable with the aggregate amount of principal and interest on the notes (after deducting the credit of $309), that being the amount of the appellees' money which he received, and that sum is chargeable with

interest at the rate of six per cent. per annum until paid, that being the rate of interest which was allowed by law at that time.

The decree is founded upon a different rule of interest from this, and is erroneous. It must, therefore, be reversed, and the cause is remanded for a new account and decree, upon the principles herein stated.